IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LLOYD SATERFIELD, )
#K53497, )
　 )
　　　　Plaintiff, )
　 )
vs. ) Case No. 18−cv−560−NJR
　 )
JOHN R. BALDWIN, )
JACQUELINE LASHBROOK, )
WEXFORD HEALTH SOURCES, INC., )
DR. RITZ, and )
DR. SMITH, )
　 )
　　　　Defendants. )

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Lloyd Saterfield, an inmate in Menard Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. In his Complaint, Plaintiff claims the defendants have been deliberately indifferent to his serious medical issues in violation of the Eighth Amendment. (Doc. 1).

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> 　(1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> 　(2) seeks monetary relief from a defendant who is immune

1

from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

After a careful review of the Complaint and supporting exhibits, this case survives the Court's threshold screening.

## **The Complaint**

In his Complaint (Doc. 1), Plaintiff makes the following allegations: near the end of 2013, Plaintiff began to have chronic lower back pain that made it hard for him to work, sit up to write or read, and, at times, leave his cell for meals and activities. (Doc. 1, p. 3). Plaintiff submitted a nurse sick call about this issue. *Id.* After he spoke with the nurse, he was given 600mg of Ibuprofen and was put on the list to see the doctor. *Id.* At the doctor's visit, Plaintiff was told that he was getting old and had "a little arthritis in his lower back." *Id.* The doctor told him that he could only give him some Ibuprofen to ease the pain. *Id.*

This pattern continued until Plaintiff spoke with Dr. John Trost, who ordered that Plaintiff be given an x-ray for chronic lower back pain and right foot drop. *Id.* The x-ray was performed March 24, 2014. *Id.* Dr. Trost found that Plaintiff had minimal degenerative changes.

*Id.* On May 16, 2014, he submitted Plaintiff's name for a consult with neurology for right foot drop and chronic lower back pain. *Id.* On May 30, 2014, Plaintiff received a Medical Special Service Referral Denial form, stating that "Dr. Garcia UM Wexford denied neurology/neurosurgery consult. Dr. Garcia UM Wexford recommended Dr. Trost reassess inmate and perform a good neuro exam and represent. Dr. Garcia also recommended onsite x-ray of C-Spine and Thoracic Spine and represent with results." (Doc. 1, p. 4); (Doc. 1-1, p. 2). Dr. Trost ordered the recommended x-rays on June 5, 2014, and the results came back as "unremarkable cervical and thoracic spine radiographs." (Doc. 1, p. 4). Dr. Trost then put Plaintiff in for an MRI because he was still having lower back pain and right foot drop, and he could not work, sit up, read or write, or leave his cell for meals and activities at certain times. *Id.*

On August 4, 2014, Plaintiff got an MRI of his lumbar spine. *Id.* It revealed a "bilateral lateral recess narrowing related to a disc bulge with moderate bilateral foraminal stenosis at L-4, L-5, bilateral ligamentous thickening, facet arthropathy, and facet effusions." *Id.* Also shown was a "bilateral recess narrowing with facet disease at L-5, S-1, but no canal or foraminal stenosis." *Id.* After receiving these results, Dr. Trost submitted Plaintiff to see a spine surgeon on September 11, 2014. *Id.* On September 15, 2014, Wexford recommended that Dr. Trost "gather more information and represent if necessary." (Doc. 1, p. 5). Dr. Trost told Plaintiff that he was not sure what else Wexford wanted, and he thought it was just trying to save money. *Id.* He told Plaintiff he could give him more Ibuprofen, and he recommended Plaintiff file suit against Wexford. *Id.*

Thanks to the pain medication, Plaintiff's pain became tolerable, so "he put up with it until June 6, 2017, when he had to be taken to SIH Herrin Hospital for increased colon content and kidney failure." *Id.* At the hospital, his labs showed that Plaintiff was "at the verge of death."

*Id.* The kidney specialist at the hospital advised Plaintiff not to take any more Ibuprofen-like medication, as such drugs were the reason his kidney had failed. *Id.*

Plaintiff's back pain increased when he ceased taking Ibuprofen-related medication, so he put in for the doctor call line and was given Trumadol 100mg three times per day. *Id.* Because of Plaintiff's continuing lower back pain and its effect on his daily activities, Dr. Siddiqui submitted Plaintiff for an MRI. (Doc. 1, p. 6). Dr. Ritz did not approve the MRI, stating that he "would like to obtain more information." *Id.* In response, Dr. Siddiqui ordered an x-ray, which was taken on October 27, 2017. *Id.* The x-ray found a "moderate to large amount . . . of retained gas and stool throughout the colon." *Id.* It also showed Plaintiff's lumbar spine was in good alignment, that there was no loss of vertebral body height, and that there was "mild interspace narrowing at L4-5 and L5-S1." *Id.* Dr. Siddiqui presented these findings for collegial review in response to the request for more information. *Id.* Dr. Smith did not approve the request; instead, he noted that "he would like to obtain update x-rays and MRI reports and represent." *Id.*

Plaintiff filed an institutional grievance about this issue on November 27, 2017. (Doc. 1, p. 7). On December 8, 2017, Dr. Siddiqui and RN Holly Hawkins responded to Plaintiff's grievance with a joint statement, noting that they "reviewed [Plaintiff's] grievance and medical record" and stating that Plaintiff "saw Dr. Siddiqui today and he has referred [Plaintiff] to collegial and also for physical therapy to evaluate and treat." *Id.* Plaintiff then filed a grievance on December 19, 2017. *Id.* The grievance officer, Lori Oakley, sent a review and recommendation of the grievance to Defendant Lashbrook, recommending Plaintiff's grievance be deemed moot because he was seen on November 27, 2017, and was referred to collegial and physical therapy. *Id.* Lashbrook concurred with Oakley's recommendation and advised Plaintiff in writing of the decision on January 3, 2018. (Doc. 1, p. 8).

Plaintiff appealed this decision on January 9, 2018. *Id.* On January 26, 2018, Debbie Knauer of the Administrative Review Board ("ARB") reported the ARB's findings to be that "the issue was appropriately addressed by the facility administration" and that the "actual treatment ordered is not within the jurisdiction of this office and must be ordered by the attending physician." *Id.* John Baldwin concurred with the ARB's recommendation to deny the grievance on January 26, 2018. *Id.*

Plaintiff requests declaratory and monetary relief. (Doc. 1, p. 12). Plaintiff also seeks an injunction directing Defendants to arrange for Plaintiff to receive an MRI, see a neuro-surgeon, and have surgery if it is needed. *Id.*

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to designate a single count in this *pro se* action. The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of this count does not constitute an opinion regarding its merit.

> **Count 1 –** Defendants showed deliberate indifference to Plaintiff's serious medical need involving his chronic lower back pain and issues associated that condition in violation of the Eighth Amendment.

As discussed in more detail below, Count 1 will be allowed to proceed. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

## Count 1

The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. *See Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may

5

constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim, a prisoner must show that: (1) he suffered from an objectively serious medical need; and (2) state officials acted with deliberate indifference to the prisoner's medical need, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The Court finds that Plaintiff has sufficiently alleged that he suffers from an objectively serious medical need in the form of his chronic lower back pain. The Complaint also must satisfy the subjective component of these claims, however. To do so, the Complaint must suggest that the defendants exhibited deliberate indifference to Plaintiff's serious medical need. Deliberate indifference is established when prison officials "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834).

This standard is satisfied with respect to Ritz and Smith. According to the Complaint, these individuals were responsible for denying the requests submitted by Plaintiff's treating physicians for further testing and treatment of his chronic lower back pain. In essence, Plaintiff claims that these individuals were responsible for giving him "the run around" instead of approving needed treatment. (Doc. 1, p. 7). These allegations support a claim of deliberate indifference under Count 1 against Ritz and Smith.

With respect to Lashbrook and Baldwin, "[a]s non-medical defendants, they were entitled to reasonably rely on the expertise of the medical professionals." *Thornton v. Godinez*, No. 17-1473, 2017 WL 6492651, at *2 (7th Cir. Dec.19, 2017) (citing *Johnson v. Doughty*, 433 F.3d 1001, 1010–11 (7th Cir. 2006)). *See also Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) ("Prison officials who simply processed or reviewed inmate grievances lack personal

6

involvement in the conduct forming the basis of the grievance.") (citing *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)).

From the grievance response attached to the Complaint, it appears that the Grievance Officer investigated Plaintiff's allegations regarding improper medical care. She was informed by his medical providers that they recently met with him and were providing him with care pursuant to their medical judgment, including submitting him to collegial review and ordering physical therapy. After the investigation, Lashbrook concurred with the assessment that the grievance was moot. Plaintiff appealed the decision to the ARB, and Baldwin similarly concurred with the assessment that the administration at Menard handled the situation appropriately and that they would defer to Plaintiff's physicians on the matter of what medical care is appropriate. Plaintiff has failed to implicate Lashbrook and Baldwin for deliberate indifference to his medical needs based on these allegations, and because the doctrine of *respondeat superior* is not applicable to § 1983 actions, they will be dismissed without prejudice from this action. *Sanville,* 266 F.3d at 740.

With respect to Wexford, a corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). Plaintiff has not alleged that the defendants either acted or failed to act as a result of an official policy espoused by Wexford. Therefore, Count 1 shall be dismissed without prejudice as against Wexford.

**Injunctive Relief**

The Complaint includes a request for injunctive relief. Notably, Plaintiff did not file a separate motion seeking a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, nor does he specifically mention a desire for a preliminary, rather than permanent, injunction. Should an urgent need arise, Plaintiff may request a preliminary injunction by filing a separate motion pursuant to Rule 65. Until he does so, his request will be construed as a request for permanent, not preliminary, injunctive relief.

**Pending Motions**

Plaintiff has filed a Motion for the Appointment of Counsel (Doc. 3), which is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for a decision.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNT 1** will **PROCEED** against **RITZ** and **SMITH** and is **DISMISSED** without prejudice as against **WEXFORD**, **LASHBROOK**, and **BALDWIN**.

**IT IS FURTHER ORDERED** that **WEXFORD**, **LASHBROOK**, and **BALDWIN** are **DISMISSED** without prejudice from this action for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that as to **COUNT 1**, the Clerk of Court shall prepare for **RITZ** and **SMITH**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent,

the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Wilkerson** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  March 29, 2018**

                                                                    _____
                                                                    **NANCY J. ROSENSTENGEL**
                                                                    **United States District Judge**