UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LLYOD SATERFIELD, K53497, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 3:18-cv-00560-GCS |
| ROBERT SMITH, and | ) |
| MOHAMMED SIDDIQUI, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

In March 2018, Plaintiff Llyod Saterfield filed suit against Defendants Dr. Robert Smith and Dr. Ritz, the latter of whom has since been dismissed. (Doc. 1). Plaintiff brings this claim pursuant to 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to his chronic lower back pain and related medical issues during Plaintiff's incarceration at Menard Correctional Center. (Doc. 1, ¶ 45). On January 22, 2019, Plaintiff filed an Amended Complaint adding Defendant Dr. Mohammed Siddiqui. (Doc. 72). Pending before the Court is Defendants' motion for summary judgment. (Doc. 149). For the reasons delineated below, the motion for summary judgment is **GRANTED in part and DENIED in part.**

### FACTUAL ALLEGATIONS

In 2013, Plaintiff began complaining of lower back pain while he was incarcerated at Menard Correctional Center. (Doc. 153, p. 3). On August 4, 2014, Plaintiff underwent a

Magnetic Resonance Imaging scan ("MRI"), which revealed a moderate bilateral spinal stenosis at level L4-L5. *Id.* At that time, treating physicians prescribed Plaintiff Ibuprofen. (Doc. 153, p. 4). However, in 2017, Plaintiff was hospitalized with acute kidney failure, which was attributed to his intake of Ibuprofen. *Id.* On September 5, 2017, Defendant Siddiqui prescribed Plaintiff Tramadol for his continued back pain. *Id.* On September 8, 2017, Defendant Siddiqui submitted a referral request for an MRI of Plaintiff's spine. *Id.* Dismissed-party, Dr. Ritz, requested that Plaintiff's x-rays be updated and that the 2014 MRI report be presented before the referral request of the MRI was approved. *Id.* Defendant Siddiqui then ordered a subsequent x-ray of Plaintiff's spine, which was performed on October 26, 2017. (Doc. 153, p. 5).

In early November 2017, Defendant Siddiqui submitted another referral request for an MRI on Plaintiff's spine. (Doc. 153, p. 5). Defendant Smith reviewed Plaintiff's condition and determined that he needed more information, including an updated x-ray report and the 2014 MRI. *Id.* On November 27, 2017, Plaintiff discussed the x-rays with Defendant Siddiqui, who noted Plaintiff's chronic lower back pain. *Id.* Defendant Siddiqui renewed Plaintiff's prescription for Tramadol and referred Plaintiff to physical therapy. *Id.*

On December 8, 2017, Plaintiff again met with Defendant Siddiqui regarding his condition. (Doc. 153, p. 5). Defendant Siddiqui entered a request for the 2014 MRI report due to Defendant Smith's previous request for collegial review. *Id.* He also noted that Plaintiff's pain was being controlled by Tramadol and put in a renewed referral for a physical therapy evaluation. *Id.*

On January 18, 2018, Plaintiff underwent his physical therapy evaluation. (Doc. 154, p. 5).[1] Plaintiff reported that Tramadol controlled his pain, but experienced higher levels of pain without the medication. *Id.* After the evaluation, Plaintiff was scheduled for several weeks of physical therapy appointments. *Id.* On February 16, 2018, Defendant Siddiqui again saw Plaintiff regarding his condition. *Id.* Defendant Siddiqui noted that there had been no response to physical therapy. *Id.* He therefore initiated a referral request for an MRI. *Id.*

On February 22, 2018, after review of the x-rays and previous MRI report, Defendant Smith did not approve of the referral "at this time." (Doc. 153, p. 6). Defendant Smith instead recommended Plaintiff be prescribed Elavil, a nerve pain medication; he further recommended that Plaintiff continue with conservative on-site management. *Id.*; (Doc. 154, p. 15-16). Despite Defendant Smith's recommendation, Defendant Siddiqui did not prescribe or administer Elavil to Plaintiff in 2018. (Doc. 154, p. 10).

Throughout April, May and June of 2018, Plaintiff experienced continued back pain and indicated that Tramadol was no longer controlling his pain. (Doc. 153, p. 6-7). On June 18, 2018, Defendant Siddiqui submitted a referral for an MRI, indicating that other medications had not been successful and that Plaintiff continued to complain of

---

[1] There is some discrepancy as to the date on which Plaintiff began physical therapy. Plaintiff asserts he began physical therapy on January 18, 2017. (Doc. 154, p. 5). Using this date, Plaintiff's physical therapy prescription would last until March 1, 2017, given that Plaintiff was scheduled for six weeks of physical therapy. *Id.* However, Defendants assert that Plaintiff began physical therapy on January 28, 2017. (Doc. 150, p. 6). Using this date, Plaintiff would not complete physical therapy until March 11, 2017. Because the Court examines the facts in the light most favorable to Plaintiff, as the non-moving party, the Court assumes that Plaintiff began physical therapy on January 18. *See Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

pain. (Doc. 153, p. 7). On June 22, 2018, the proper personnel approved Defendant Siddiqui's request for a new MRI. *Id.*

On July 31, 2018, Defendant Siddiqui determined that Plaintiff's spinal stenosis was slightly worse than in 2014 and that Plaintiff should undergo an orthopedic consultation. (Doc. 153, p. 7). On August 2, 2018, Defendant Siddiqui and Dr. Ritz discussed that recommendation. *Id.* Dr. Ritz then approved the request for an orthopedic surgeon evaluation. (Doc. 153, p. 7-8).

On October 3, 2018, after Plaintiff received an orthopedic evaluation by an offsite specialist, Defendant Siddiqui submitted a referral request for Plaintiff to undergo an L4-5 laminectomy, which was approved. (Doc. 153, p. 8). Plaintiff underwent laminectomy on November 19, 2018. *Id.* On January 14, 2019, Plaintiff indicated that he was very pleased with the surgical results and that he had no radicular symptoms. (Doc. 153, p. 9). Plaintiff informed the provider that his symptoms were relieved by either brace or splint, and by rest at both follow-up appointments. *Id.*

## LEGAL STANDARDS

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c); *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)(citing *Celotex*, 477 U.S. at 323). This Court must consider the

entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Regensburger,* 138 F.3d at 1205 (citing *Anderson,* 477 U.S. at 255). *See also Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009)(stating that "we are not required to draw every conceivable inference from the record . . . we draw only reasonable inferences") (internal citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in fact-finding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *See Walker v. Shansky*, 28 F.3d 666, 670–671 (7th Cir. 1994), aff'd, 51 F.3d 276 (citing *Celotex*, 477 U.S. at 324). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted). *Accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994). In other words, "inferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009) (internal citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be

evidence on which the jury could reasonably find for the [non-movant]"). Instead, the non-moving party must present "definite, competent evidence to rebut the [summary judgment] motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (internal citation omitted).

## ANALYSIS

A prisoner seeking to establish that the medical care he received in prison was so insufficient as to violate the Eighth Amendment must prove that: (1) he had an objectively serious medical need, and (2) the defendant prison official was deliberately indifferent to that need. *See Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). A medical condition is objectively serious if a physician has determined that treatment is mandated, or if it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Johnson v. Snyder*, 444 F.3d 579, 584-585 (7th Cir. 2006)(citing *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)), overruled on other grounds in *Hill v. Tangherlini*, 724 F.3d 965, 968 n.1 (7th Cir. 2013). In order to find that a defendant was deliberately indifferent, there must be a condition that required treatment, knowledge on the part of the health care provider of an excessive risk to health or safety, and a decision to disregard that risk. *See Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994)(citing *Farmer v. Brennan*, 511 U.S. 825 (1994)). Deliberate indifference exists only where an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837-838.

When a plaintiff asserts a claim of deliberate indifference on the basis of a defendant physician's care, that plaintiff must show the decision is "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate the person responsible did not base the decision on such judgment." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). This standard exceeds mere negligence; instead, a plaintiff must show intent or reckless disregard. *See Farmer*, 511 U.S. at 837-838.

The Court finds that a reasonable jury could find that Defendant Siddiqui was deliberately indifferent to Plaintiff's serious medical needs. Accordingly, summary judgment is denied as to Defendant Siddiqui. However, the Court finds that a reasonable jury could not find that Defendant Smith was deliberately indifferent to Plaintiff's serious medical needs. As such, summary judgment is granted as to Defendant Smith.

## I. Whether Defendant Siddiqui Exhibited Deliberate Indifference to Plaintiff's Serious Medical Needs

When determining whether a defendant physician was deliberately indifferent to an inmate's serious medical needs, the Court applies a totality of the circumstances approach. *See Petties v. Carter*, 836 F.3d 722, 728-729 (7th Cir. 2016) (internal citations omitted). Plaintiff makes three arguments supporting his contention that Defendant Siddiqui was deliberately indifferent to Plaintiff's serious medical needs: (i) Defendant Siddiqui continued an ineffective course of treatment by prescribing Plaintiff Tramadol, (ii) Defendant Siddiqui prolonged Plaintiff's pain by failing to refer Plaintiff for an MRI in a timely manner, and (iii) Defendant Siddiqui failed to follow Defendant Smith's recommendation to prescribe Plaintiff Elavil. Under the totality of the circumstances, the

Court finds that a reasonable jury could determine that Defendant Siddiqui demonstrated deliberate indifference to Plaintiff's serious medical needs.

Persisting in a course of ineffective treatment constitutes cruel and unusual punishment in violation of the Eighth Amendment when a defendant doctor chooses the "easier and less efficacious treatment" without exercising professional judgment. *Arnett* 658 F.3d at 754 (internal citations omitted). *See also White v. Napoleon*, 897 F.2d 103, 109 (3rd Cir. 1990)(finding a violation of the Eighth Amendment where a defendant doctor insisted on continuing the same course of treatment when that doctor knew the treatment was painful and ineffective). The standard is not whether a plaintiff took steps to request a specific, different course of treatment. Instead, the proper analysis considers whether the defendant doctor knew he was providing deficient treatment. *See Petties*, 836 F.3d at 726.

Delay in treatment may evidence deliberate indifference to a plaintiff's serious medical needs when it is both: (1) inexplicable or unnecessary, and (2) intolerable when weighed against the seriousness of the condition and the ease with which the condition could be treated. *See, e.g.*, *Petties*, 836 F.3d at 730 (stating that inexplicable delay which serves no penological interest is evidence supporting an inference of deliberate indifference); *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008)(finding deliberate indifference when guards delayed treatment of a broken nose for a day and a half); *Miller v. Campanella*, 794 F.3d 878, 880 (7th Cir. 2015)(holding that failing to provide over-the-counter medicine to treat gastro-esophageal reflux disease for two months established a genuine issue of material fact as to deliberate indifference because the medicine is easy

to obtain). *Cf. Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997)(determining that a six-month delay in treating a relatively mild cyst infection was not indicative of deliberate indifference). Courts recognize that prisons have limited resources making delays in treatment more likely. *See Petties*, 836 F.3d at 730. Therefore, in order to sustain a claim for deliberate indifference based on a delay in treatment, a plaintiff must provide independent evidence that the delay either exacerbated the underlying injury or illness or prolonged the plaintiff's pain unnecessarily. *Id*. at 730-731. *See also Gayton v. McCoy*, 593 F.3d 610, 624 (7th Cir. 2010)(noting that if a plaintiff can proffer no evidence that a delay in medical treatment exacerbated an injury, summary judgment should be granted on the issue of causation).

Courts apply the same analysis to a physician's decision to delay referral to a specialist. Because referral is an exercise of medical discretion, the failure to refer indicates deliberate indifference to a prisoner's serious medical needs only if it is blatantly inappropriate. *See, e.g.*, *Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014)(discussing a defendant's failure to refer a plaintiff for an MRI). Nevertheless, plaintiffs are not required to provide "objective evidence" of their condition before referral becomes appropriate. *See Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005). Nor are plaintiffs required to show they were literally ignored in their requests for a referral. *See Perez v. Fenoglio*, 792 F.3d 768, 778 (7th Cir. 2015)(citing *Arnett*, 658 F.3d at 751).

In assessing whether delayed referral supports a claim for deliberate indifference, courts consider the severity of plaintiff's condition, the length of the delay, and whether the delay exacerbated the underlying injury or unnecessarily prolonged a plaintiff's

suffering. *See McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). *See also Perez*, 792 F.3d at 778 (stating that a defendant doctor waiting four days to refer plaintiff to a specialist, by which time it was too late for the specialist to suture the wound, could support a claim for deliberate indifference); *Grieveson*, 538 F.3d at 779 (holding that when plaintiff had a nasal fracture and could experience further bleeding, then later needed surgery to repair his nose, the failure to refer the plaintiff to a specialist could support finding deliberate indifference); *Jones v. Simek*, 193 F.3d 485, 490-491 (7th Cir. 1999)(finding a reasonable jury could rule in favor of plaintiff under the totality of circumstances where defendant acknowledged plaintiff needed to see a specialist, yet did not provide a specialist for six months; did not provide pain medication; and refused to follow a specialist's advice once plaintiff was finally referred).

However, a defendant physician is not liable when authorities deny the physician's request for a referral, the decision to pursue referral is an exercise of professional judgment, and the denial is beyond the physician's control. *See, e.g., Perez*, 792 F.3d at 779 (acknowledging that showing "someone else was in control" could support granting summary judgment after discovery); *Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir. 2002)(upholding a decision granting summary judgment when the plaintiff failed to show that delay between the initial visit, diagnosis and specialist's treatment were within the defendant physician's control); *Baker v. Wexford Health Services, Inc.*, 118 F. Supp. 3d 985, 996-997 (N.D. Ill. 2015)(granting summary judgment when the defendant physician submitted a referral for collegial review, which the collegial review board then denied; thus, the record showed that "someone else was responsible for the alleged

delays"). *But cf. Goodloe v. Sood*, 947 F.3d 1026, 1032 (7th Cir. 2020)(stating plaintiff's case should survive summary judgment when a defendant doctor undertook no renewed effort to arrange for plaintiff to see a specialist when referral was medically necessary and had been delayed for two weeks).

Similarly, a physician's decision to deviate from the recommendation of a specialist may indicate deliberate indifference when that decision suggests that the physician did not apply medical judgment. The prison physician is a prisoner's primary care physician, as such, that physician is "free to make his own determination" on the basis of professional judgment. *Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012). If a plaintiff can show that no minimally competent professional would have so determined under those circumstances, summary judgment is not appropriate. *See Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998). In contrast, a plaintiff who merely shows evidence that *some* professionals would have chosen a different course of treatment has not provided sufficient evidence to overcome summary judgment. *See Petties*, 836 F.3d at 729 (citing *Steele v. Choi*, 82 F.3d 175, 179 (7th Cir. 1996)) (emphasis in original).

When a prisoner has informed a prison physician that a course of treatment is not working, and when a specialist instructs the physician to pursue a different course of treatment, a physician's failure to do so may also indicate deliberate indifference. *See Arnett*, 653 F.3d at 752. *See also Jones*, 193 F.3d at 490-491 (reversing summary judgment for a prison doctor who failed to follow a specialist's advice). However, a mere difference of opinion between professionals does not give rise to deliberate indifference. *See Estate*

*of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996), *cert. denied*, 519 U.S. 1109 (1997). The operative distinction is whether the two physicians disagree about a subjective issue of medical judgment or whether the treating physician deliberately mistreated the plaintiff. *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)).

Plaintiff first argues that Defendant Siddiqui continued a course of treatment known to be ineffective by prescribing Tramadol. Although Plaintiff's pain was getting worse from an eight out of ten in April 2018 to a nine out of ten less than one month later, Defendant Siddiqui continued to treat Plaintiff by prescribing Tramadol. (Doc. 154, p. 11). Plaintiff additionally reported that Tramadol was not working to treat his pain and that his pain was spreading from his middle and upper back and neck to his legs and arms. *Id.* Defendant Siddiqui himself noted that Tramadol did not seem to be effective and that Plaintiff's spinal stenosis was worsening. (Doc. 150, p. 14-15). Nevertheless, Defendant Siddiqui continued to prescribe Tramadol for Plaintiff's pain at the exact same prescription level as had been prescribed since 2017. (Doc. 154, p. 11-12).

Next, Plaintiff asserts that Defendant Siddiqui prolonged Plaintiff's pain by failing to refer Plaintiff for an MRI and to an orthopedic surgeon in a timely manner. Defendant Siddiqui first submitted a referral request for an MRI on September 8, 2017; this referral was denied pending updated x-rays and a 2014 MRI report. (Doc. 150, p. 4). In early November 2017, Defendant Siddiqui submitted another request for an MRI referral after ordering an x-ray of Plaintiff's spine in October 2017. *Id.* at p. 5. After review, Defendant Smith again requested Defendant Siddiqui provide additional information, including an x-ray and the Plaintiff's 2014 MRI results. *Id.* Defendant Siddiqui discussed the x-ray

results with Plaintiff on November 27, 2017; he then submitted the 2014 MRI results to Defendant Smith for review on December 8, 2017. *Id.*

Defendant Siddiqui referred Plaintiff to physical therapy on January 18, 2018. (Doc. 154, p. 5). When Plaintiff did not show improvement after the initial rounds of treatment, Defendant Siddiqui again initiated a referral request for an MRI on February 16, 2018. (Doc. 150, p. 6). Defendant Smith denied this request on February 22, 2018. *Id.* at p. 6. As Plaintiff's back pain worsened, Defendant Siddiqui again requested an MRI referral on June 18, 2018. *Id.* at p. 7. The collegial review board approved this request. *Id.* The MRI indicated slightly worse results on July 6, 2018, and on July 31, 2018, Defendant Siddiqui requested Plaintiff be referred to a specialist. *Id.* This request was approved on August 2, 2018, and Plaintiff saw a specialist on October 3, 2018. *Id.* at p. 7-8. Plaintiff, however, asserts that by delaying his referral until June 2018, Defendant Siddiqui prolonged Plaintiff's pain, especially in light of Defendant Siddiqui's continuation of an ineffective course of treatment with Tramadol. (Doc. 154, p. 12, 14).

Finally, Plaintiff argues that Defendant Smith recommended Plaintiff be prescribed Elavil, a nerve pain medication. (Doc. 154, p. 10). Defendant Siddiqui signed off on this recommendation. *Id.* at p. 10. However, Defendant Siddiqui – who was responsible for prescribing Plaintiff's prescriptions – did not prescribe Elavil for Plaintiff anytime in 2018. *Id.* at p. 10-11. Instead, Defendant Siddiqui continued Plaintiff's Tramadol prescription as Plaintiff's pain worsened over the course of March, April and May of 2018. *Id.* at p. 11.

Defendant Siddiqui responds that he consistently referred Plaintiff for an MRI throughout 2017 and 2018. (Doc. 150, p. 13-14). However, in 2017 and February 2018, after review of the available data, the MRI referrals were denied. *Id.* at p. 14. Defendant Siddiqui further points out that he submitted an MRI request in June 2018 when Plaintiff's pain began worsening. *Id.* This referral was approved, and Plaintiff received treatment which alleviated his pain shortly thereafter. *Id.* In addition to initiating multiple MRI requests, Defendant Siddiqui also treated Plaintiff with Tramadol, physical therapy, and diagnostic x-rays. (Doc. 158, p. 15). Overall, Defendant Siddiqui asserts he provided treatment using his medical judgment in order to alleviate, rather than prolong, Plaintiff's pain. *Id.* at p. 16.

It is true that when Defendant Siddiqui first prescribed Tramadol, Plaintiff reported decreased pain. (Doc. 150, p. 4). Plaintiff also demonstrated an increased range of motion. *Id.* As Plaintiff's treatment progressed, Plaintiff consistently reported that Tramadol assisted in controlling his pain. *Id.* at p. 5. Defendant Siddiqui also noted that Plaintiff reported much higher levels of pain without Tramadol than with Tramadol. *Id.* at p. 6. However, Plaintiff also stated that his pain was increasing after his physical therapy appointments had concluded. *Id.* at p. 14. Between Defendant Siddiqui's referral on February 16, 2018 and the referral on June 18, 2018, Plaintiff complained that Tramadol was no longer controlling his pain five times. *Id.* at p. 6-7.

Plaintiff's six-week physical therapy prescription expired a few weeks after Defendant Siddiqui made the referral request on February 16, 2018. (Doc. 154, p. 5). Prior to the completion of physical therapy, Defendant Siddiqui noted that it did not appear to

be helping Plaintiff. *Id.* A month after Plaintiff had completed his physical therapy appointments Plaintiff experienced continued back pain (from April to May), and he indicated that Tramadol was no longer controlling the pain. (Doc. 153, p. 6-7). In fact, Plaintiff reported his pain as being an eight or nine out of 10 with the pain spreading throughout his entire upper body. (Doc. 154, p. 11). When Defendant Siddiqui saw Plaintiff on May 21st, he knew that physical therapy was not effective, that Tramadol was no longer controlling the pain, and that Plaintiff's pain had increased in severity. Despite this knowledge, Defendant Siddiqui did not prescribe Elavil, as had been recommended, but instead renewed Plaintiff's Tramadol prescription at the exact same level as before.[2] Furthermore, other than renewing the aforementioned prescription, Defendant Siddiqui did not take any other steps to alleviate Plaintiff's considerable pain as he had done in prior appointments with Plaintiff. This decision appears to be inexplicable given that Defendant Siddiqui himself noted that Plaintiff's pain medication no longer appeared to be as effective as it had been in the winter of 2017 and early 2018. *Id.* at p. 14.

---

[2] The Court notes that Defendant Smith is not a specialist, but a peer of Defendant Siddiqui's. Accordingly, Defendant Siddiqui is not deliberately indifferent merely because he did not follow Defendant Smith's recommendation to administer Elavil, rather than Tramadol. *See Estate of Cole by Pardue*, 94 F.3d at 261. However, Defendant Smith's recommendation does provide an example of a similar, alternative treatment to which Plaintiff may have been responsive. Plaintiff previously noted that Tramadol had controlled his pain suggesting that a different nerve medication may have had an impact on his pain. Additionally, there is no evidence that providing Elavil would have been more difficult than providing Tramadol. Nor does Defendant Siddiqui explain why he continued with the Tramadol prescription rather than Elavil. It is true that standing alone the failure to administer Elavil at most probably amounts to negligence. However, when coupled with Defendant Siddiqui's knowledge of Plaintiff's pain and the fact that other treatments and Tramadol were not working, Defendant Siddiqui's failure to administer Elavil further contributed to an inexplicable delay in Plaintiff's effective treatment and the prolonging of Plaintiff's pain.

Defendant Siddiqui's decision on May 21st also stands in stark contrast with how Defendant Siddiqui had previously treated Plaintiff. In late 2017 and early 2018, Defendant Siddiqui consistently requested an MRI referral for Plaintiff. While it is true that Defendant Siddiqui did not have the ultimate authority to order a referral, such a referral could not be accomplished without Defendant Siddiqui first requesting one.[3] The fact that Defendant Siddiqui previously requested an MRI referral on three separate occasions prior to the June 2018 referral request is an implicit acknowledgement that he believed such a referral was medically necessary. Thus, Defendant Siddiqui's decision to wait almost a month later until June 18 to request another referral seems all the more questionable and inexplicable in light of what Defendant Siddiqui knew and how he had treated Plaintiff in the past. This delay arguably prolonged Plaintiff's pain unnecessarily. Furthermore, the ease with which this could have been alleviated was readily apparent, *i.e.*, referring Plaintiff for an MRI, which was ultimately done, albeit a month later during which Plaintiff endured considerable pain. As such, the Court finds that a reasonable jury could find that Defendant Siddiqui demonstrated deliberate indifference to Plaintiff's serious medical needs, and summary judgment is denied as to Defendant Siddiqui.

---

[3] The facts and inferences drawn from those facts as construed in favor of Plaintiff show that this is in fact the case. First and foremost, the successful referral which was approved in June only came about after Defendant Siddiqui had requested it. Moreover, when Defendant Smith denied the MRI referral on February 22, 2018, Defendant Smith noted that he was denying it "at this time" (Doc. 153, p. 6), which implied that Defendant Siddiqui should try again. This would presumably be after Plaintiff's physical therapy had been completed and after sufficient time had passed to determine how Plaintiff was responding to Elavil.

## II. Whether Defendant Smith Exhibited Deliberate Indifference to Plaintiff's Serious Medical Needs

An MRI is a "classic example of a matter for medical judgment." *Pyles*, 771 F.3d at 411 (citing *Estelle*, 429 U.S. at 107). A defendant's decision to forego an MRI referral supports finding deliberate indifference only when that decision goes against the norms of professional conduct. *See, e.g.*, *Broadfield v. Williams*, No. 18-2300, 768 Fed. Appx. 544, 549 (7th Cir. April 22, 2019)(finding that the decision to order an x-ray and an MRI in lieu of referring to a specialist fell within a doctor's medical discretion and so was not demonstrative of deliberate indifference); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866 (7th Cir. 2013)(finding that the decision not to refer a plaintiff for an MRI to double-check an arthritis diagnosis was not indicative of deliberate indifference because the defendants were properly treating the plaintiff for arthritis). *See also Pyles*, 771 F.3d at 411 (stating that the decision to forego an MRI was not suggestive of deliberate indifference because it was "implicitly endorsed" by other medical professionals).

Defendant Smith first denied Defendant Siddiqui's request that Plaintiff be referred for an MRI in November 2017 because Defendant Smith did not have access to a recent x-ray or Plaintiff's 2014 MRI, both of which contained helpful information in diagnosing Plaintiff's pain. (Doc. 150, p. 5). In light of the fact that Defendant Smith did not have complete information, the denial of this MRI referral does not demonstrate deliberate indifference. It is clearly within a doctor's discretion and does not go against the norms of professional conduct to deny an MRI referral under these circumstances.

Defendant Siddiqui requested another MRI referral on February 16, 2018, which was denied by Defendant Smith on February 22, 2018. (Doc. 153, p. 6). Defendant Smith did have the requested information that he did not have when he denied the first MRI request in November 2017. However, at this time, Plaintiff was still undergoing his six-week course of physical therapy. (Doc. 150, p. 6). Even though Defendant Siddiqui indicated that physical therapy was not working, it is not unreasonable, nor does it go against professional norms, to wait until all of Plaintiff's sessions had been completed before making a final assessment regarding the efficacy of physical therapy. This alone would appear to provide sufficient grounds for Defendant Smith to reject the second MRI request.

But with this second denial, Defendant Smith also recommended that Defendant Siddiqui prescribe Plaintiff Elavil, another pain medication. (Doc. 150, p. 6). Plaintiff contends that the decision to forego an MRI in favor of "conservative onsite treatment," including Elavil and physical therapy, is indicative of deliberate indifference. (Doc. 154, p. 15). While it is true that Plaintiff was experiencing some pain at the time this referral was denied, it appeared that Tramadol was controlling the pain in February 2018. Plaintiff did not complain of significantly increased pain until later. And, even though Defendant Siddiqui presumably informed Defendant Smith that physical therapy did not appear to be working, Plaintiff still had a few more sessions to complete. It does not stretch the bounds of professional discretion to wait and see whether Plaintiff's pain could be controlled and managed better with Elavil rather than Tramadol prior to approving an MRI referral. Moreover, to the extent that this decision had the effect of

continuing Plaintiff's pain, it still does not amount to deliberate indifference as Defendant Smith was still treating the pain, rather than ignoring it.[4] Accordingly, Defendant Smith's denial of the second MRI request does not indicate deliberate indifference, and thus, summary judgment as to Defendant Smith is granted.

## Conclusion

For the above-stated reasons, Defendants' motion for summary judgment is **GRANTED in part and DENIED in part.** Summary judgment is granted in favor of Defendant Smith and denied as to Defendant Siddiqui. Accordingly, the Court DIRECTS the Clerk of the Court to dismiss Defendant Smith from the case.

**IT IS SO ORDERED.**

**Dated: March 30, 2021.**

Digitally signed by Judge Sison 2
Date: 2021.03.30 13:45:25 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

---

[4] While it is true that Plaintiff never actually received Elavil, this supports finding Defendant Siddiqui was deliberately indifferent. It does not support finding that Defendant Smith was deliberately indifferent because there is no evidence that Defendant Smith had actual knowledge that Plaintiff was not receiving the proper prescription. *See Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015)(citing *Farmer*, 511 U.S. at 837)(stating that a defendant must have actual knowledge of a serious risk of harm in order to be deliberately indifferent).